IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

IN RE:        LIVING HOPE SOUTHWEST
              MEDICAL SERVICES, LLC, Debtor

PINEWOOD ENTERPRISES, L.C.                                    APPELLANT

v.                    Case Nos. 4:11-CV-04059, 4:11-CV-04098

RENEE S. WILLIAMS                                            APPELLEE

CHARLES TUCKER                                               TRUSTEE

## OPINION AND ORDER

Before the Court are two consolidated appeals from the United States Bankruptcy Court for

the Western District of Arkansas.[1]   Appellant Pinewood Enterprises, L.C. contends that the

bankruptcy court erred on reversal and remand from an appeal to this Court[2] in finding that the

Trustee and the parties had reached a settlement which excluded causes of action that the Trustee

had no standing to bring or settle.  Appellant also contends that the bankruptcy court erred, in various

aspects, in entering an order enjoining Pinewood from proceeding in a state court action against non-

debtor entities.

        For the reasons stated herein, the Court finds that the bankruptcy court erred in approving a

settlement without requiring proof that a settlement had been reached between the Trustee Renee S.

Williams and the settling parties subsequent to reversal on appeal of the original settlement

---

[1] The Honorable James G. Mixon, Chief Judge, United States Bankruptcy Court for the
Western District of Arkansas.

[2] The Honorable Jimm L. Hendren, United States District Judge for the Western District of
Arkansas.

-1-

agreement between the parties.  The Court further finds that the bankruptcy court erred in enjoining Appellant Pinewood Enterprises, L.C. from proceeding in its state court action.

I.    **Background**

The Court restates, as supplemented, its statement of the procedural and substantive background of this case from its previous Order (Doc. 30).[3]

Appellant Pinewood is an unsecured creditor of debtor Living Hope Southwest Medical Services, LLC ("LHSW" or "the Debtor").  In 1998 Pinewood, as landlord, and LHSW entered into a lease of certain real property located in Texarkana, Arkansas.  (R. PW:001707).  The lease was partially guaranteed by Living Hope Institute, Inc. ("LHI") pursuant to a Guaranty Agreement executed by Kimbro Stephens ("Kimbro") as LHI's president and ratified thereafter by LHSW.  (R. PW: 001745-001751).  LHSW defaulted on the terms of the lease in the amount of at least $1,300,000.00 (R. PW3:002585), and in the spring of 2006, Pinewood filed a complaint in the Circuit Court of Miller County,[4] Arkansas ("State Court Case") against LHSW and Kimbro to recover the property, for a judgment on past-due lease payments, and to pierce the corporate veil of LHSW.  (R. PW: 001700-001704).  On July 18, 2006, the Miller County Circuit Court issued an Order for Immediate Possession of the real property.  (R. PW3: 000082).  LHSW filed a petition for relief under Chapter 11 of the bankruptcy code on that same date.  (R. PW3: 001234).  LHSW's

---

[3] Document numbers cited by the Court as "Doc." refer to docket numbers in case 4:11-CV-04059 unless otherwise noted.  The Court will cite to the record as "R."  In large part, the Court uses the record denoted as "PW3" for consistency and ease of reference.  Any documents cited to, however, the Court found to be appropriately considered as having been before the bankruptcy court, necessary for the Court to have a full understanding of the underlying litigation, and made a part of the record on the relevant appeal.

[4] Honorable Kirk Johnson, Circuit Judge, Miller County, Arkansas.

-2-

Chapter 11 case was later converted to a case under Chapter 7 of the bankruptcy code on August 15, 2008, and Renee S. Williams ("Williams" or "the Trustee") was appointed as the Chapter 7 Trustee. (R. PW3: 001233, 003447). After LHSW filed for bankruptcy, Pinewood's State Court Case was put on hold for a few years. On January 12, 2010, Pinewood filed a First Amended Complaint in the State Court Case, removing LHSW as a defendant and adding numerous other defendants, including LHI. (R. PW3: 002540).

Before and after LHSW filed under Chapter 11, Kimbro and his wife Alice Stephens ("Alice" or, collectively, "the Stephenses"), and in some cases other individuals, caused various entities to be created, including an entity called Living Hope Southeast ("LHSE") and conveyed LHSW's and LHI's businesses and certain business assets to LHSE, continuing business under the name Living Hope Southeast. (R. PW3: 002585, 003448-003449).[5] LHSW provided health services to the poor and secured payments from government sponsored agencies such as Medicaid. LHSW simply ceased to do business. When the asset and business-shifting occurred, LHSE did not have a required provider number, so it used the number which had been given to LHI. (R. PW: 0531). Mike Grundy ("Grundy"), one of the defendants in Pinewood's State Court Case, had previously worked for LHI and LHSW, but when the business operations shifted, he assumed substantially his same duties under the title of Chief Executive Officer at LHSE. (R. PW: 0515, PW3: 003456). LHI has admitted that it "was part of a fraudulent scheme to conspire to evade payments due to Pinewood" and was the

---

[5] In the Consent Judgment and Order entered by the Honorable Kirk D. Johnson in the State Court Case in favor of Pinewood and against LHI, which was approved by Kimbro's brother Greg Stephens who represented that he was authorized to consent to entry of judgment against LHI, LHI acknowledged as true that after LHSW's default on the lease and Pinewood's demand for payment, one or more of the defendants in the State Court Case "transferred assets and operations from LHI to LHSE. One or more of the Defendants caused the business operations of LHI to cease and to be transferred, uninterrupted, to LHSE." (R. PW3: 002585).

-3-

"alter ego of Kimbro Stephens, Alice Stephens, and Mike Grundy."  (R. PW3: 002585).  LHSE, therefore, appears to be a continuation of the operations previously run, principally by the Stephenses individually or through various trusts and other entities, through LHSW and LHI.[6]  On April 13, 2010, a Consent Judgment and Order was entered in the State Court Case against LHI, and in favor of Pinewood in the amount of "$1,300,000.00 (which includes the Guaranteed Amount of $500,000.00)" plus pre- and post-judgment interest, costs and agreed upon legal fees of $7,500.00. (R. PW3: 002586).

In February 2009, the Trustee filed an adversary proceeding ("AP") and incorporated by reference allegations from various other AP's against numerous defendants related to the Debtor – LHSW – including LHSE, Kimbro, Alice, and Grundy under various legal theories, including alter ego claims, seeking to recover pre-petition and post-petition transfers by LHSW.  (R. PW3: 003448). The Trustee entered into a Settlement Agreement with several of the AP defendants and certain non-defendants on May 27, 2009 ("the Settlement").  (R. PW3: 000009).  The Trustee then filed a Motion for Approval of Compromise and Settlement and Notice of Right to Object, stating that "Trustee seeks recovery against the named defendants on multiple legal theories including . . . alter ego" and that the Trustee has agreed to dismiss the various AP's with prejudice[7] in exchange for Kimbro and

---

[6] Ninety-nine percent of LHSE is owned by the AK Tennessee Irrevocable Trust, whose trustee is Robert Williams, Alice's father and Kimbro's father-in-law.  (R. PW3: 000246).  The beneficiaries of the AK Trust are Kimbro and Alice as well as their children.  (R. PW3: 000268). Mr. Williams, as trustee, has the authority to distribute from the AK Trust as much money as he wishes to Alice and Kimbro.  *Id*.  Whenever Kimbro needs money, he simply calls his father-in-law to have him distribute money from the AK Trust.  (R. PW3: 000301).  The only source of money to the AK Trust is LHSE.  *Id*.

[7] The Trustee excluded one separate defendant as to whom one of the AP's would not be dismissed with prejudice.  That separate defendant and any AP remaining pending against him would appear to have no relevance to the Court's resolution of the instant appeals.

Alice agreeing to pay $750,000 and imposition of an "inchoate judgment lien" against LHSE.  (R. PW3: 000001-000002).  Although only Kimbro and Alice are directly obligated to pay anything under the Settlement, the Settlement was signed by representatives of, and purported to release claims against, the following additional entities: LHSE, Stephens & Co., Veritas Limited Partnership, AK Tennessee Irrevocable Trust ("the AK Trust"), Kimbro Stephens Insurance Trust, Alice Stephens Insurance Trust, and Ouachita Limited Partnership. (R. PW3: 000017-000019).  The Settlement was the result of months of negotiations between the Trustee and the settling parties, and the Trustee's position was that $750,000 represented a significant recovery in a Chapter 7, no-asset bankruptcy.

Pinewood filed Objections to the Trustee's Motion.  (R. PW3: 000026-000046).  Objections were also filed by Northern Healthcare Capital, LLC.  (R. PW3: 000055-000057).  The bankruptcy court granted approval of the Settlement over Pinewood's and Northern Healthcare Capital, LLC's objections.  (R. PW3: 000063).  Pinewood then filed a Motion to Alter and Amend Judgment and for Additional Findings of Fact and Conclusions of Law in regards to the bankruptcy court's Order approving the Settlement, requesting the court to amend its Order to find that the Settlement should not be approved on the grounds that the Settlement encompassed certain claims that the Trustee did not have standing to bring or settle – specifically, any claims to pierce the corporate veil of LHSW or claims against related entities as alter egos of LHSW.  (R: PW3:000065-000069).  The Trustee filed a Response (R. PW3: 000071-000072) and Brief in Support (R. PW3: 000073-000074), Pinewood filed a Reply (R. PW3: 000075-000077), and the Trustee filed a Supplemental Brief in Support (R. PW3: 000083-000085).  On January 5, 2010, the bankruptcy court entered an Order denying Pinewood's Motion to Alter or Amend Judgment.  (R. PW3: 00097).

-5-

Pinewood appealed the bankruptcy court's Order approving the Settlement to the federal district court in this same district,[8] arguing that the Settlement encompassed claims, including alter ego claims, that the Trustee had no standing to bring or settle as such claims belonged exclusively to the creditors ("Pinewood's first appeal" - the current appeal will be referred to as "the instant appeal" or "the second appeal").  (R. PW3: 000915).  In Pinewood's first appeal, Pinewood also argued two other bases for finding error in the bankruptcy court's approval of the settlement: that the bankruptcy court made inadequate findings of fact and that the Settlement was not in the best interests of the estate or the creditors.  *Id.*

On March 18, 2011, Judge Hendren reversed the Order approving the Settlement and remanded the matter to the bankruptcy court, finding that the Trustee had no standing to bring or settle alter ego or veil piercing claims, which belonged to the creditors.  (R. PW3: 000925).  Judge Hendren rejected Pinewood's two alternative arguments: that reversal of the bankruptcy court Order could be predicated on a theory that the Settlement was unreasonable and that the bankruptcy court made inadequate findings of fact.  (R. PW3: 000922, 000925).  Because Judge Hendren accepted one of Pinewood's bases for reversal, Judge Hendren found that the bankruptcy court erred in approving "the erroneous settlement in the first place."  (R. PW3: 000922).  Judge Hendren found that "this error is not harmless and requires reversal of the Bankruptcy Court's Order approving the Settlement," and ordered that the matter be remanded to the bankruptcy court "for further proceedings consistent with this opinion."  (R. PW3: 000925).

Upon remand, the bankruptcy court held a hearing on May 24, 2011 at which the Trustee was

---

[8] Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

present represented by counsel; the Trustee for the Estate of David Kimbro Stephens was present; and Pinewood's authorized representative, Dr. James Naples, was present and represented by counsel. (R. PW3: 001042-001043). Both Dr. Naples and Trustee Williams gave testimony, counsel made arguments, and various exhibits were offered and admitted into evidence for consideration by the court. At the end of the hearing, Judge Mixon stated his opinion that he agreed with the Trustee's interpretation of Judge Hendren's Order, which was that Judge Hendren had approved the Settlement such that there was no need for a new settlement. (R. PW3:001231). Rather, Judge Mixon's intention was to do an order clarifying what was not being, or had not been, settled. *Id.* The bankruptcy court issued a Supplemental Order Approving Settlement stating that "the settlement is not approved as to any alleged cause of action under any alter ego theory to pierce the corporate veil of the Debtor corporation or any third party corporation or LLC which may only be prosecuted by the creditors of the Debtor," but again approving the Trustee's Settlement in all other respects. (R. PW3: 001027-001028).

Pinewood then filed a Motion to Alter and Amend Judgment requesting that the bankruptcy court make "specific findings of fact and conclusions of law . . . regarding whether the Trustee met her burden of proof that she had reached a new agreement with the Settling Defendants" and requesting that the bankruptcy court clarify its Order by incorporating the oral findings made at the conclusion of the May 24, 2011 hearing. (R. PW3: 001029-001034). Pinewood also requested that the bankruptcy court reconsider its finding that there was currently a settlement between the Trustee and the "Settling Defendants." *Id.*

The bankruptcy court held a hearing on Pinewood's Motion to Alter and Amend Judgment on August 23, 2011 with both counsel for the Trustee and counsel for Pinewood appearing and

advancing argument.  (R. PW3: 002898).  Judge Mixon declined to alter or amend his previous Order, but took under advisement the issue of incorporating his oral findings from the May 24, 2011 hearing.  (R. PW3: 002915).  The bankruptcy court subsequently entered an Amended Supplemental Order Approving Settlement, adding that "for the reasons stated in open Court on May 24, 2011," the Trustee's Settlement was again approved in all respects except for carving out "any cause of action under any alter ego theory to pierce the corporate veil . . ."  (R. PW3:002890).

Meanwhile, in the State Court Case in Miller County, Pinewood filed their First Amended Complaint on January 12, 2010.  (R. PW3: 002540).  While Pinewood's first appeal was pending before Judge Hendren, the Trustee filed an adversary proceeding in the bankruptcy court on February 18, 2010, seeking to enjoin Pinewood from pursuing its State Court Case against LHSE and Grundy. (R. PW3: 002917-002920).  In its AP Complaint, the Trustee argued that, if Pinewood were allowed to proceed in its claims against LHSE and Grundy in state court, it would adversely impact the Trustee's ability to collect the Settlement proceeds in that it would prevent LHSE from funding the Settlement, and that, consequently it would "reduce the amount of funds available in the estate for payment of the creditors."[9]  (R. PW3: 002920).  The Trustee also argued, in a subsequently-filed pre-trial brief on January 18, 2011, that Pinewood was attempting to bring the Trustee's Section 549 causes of action against LHSE and Grundy in the State Court Case, reasoning in part that many of the factual allegations in Pinewood's First Amended Complaint were the same as in the Trustee's settled AP Complaints.  (R. PW3: 003152-003155).  On that same day, Pinewood filed a Motion to

---

[9] It is the Court's understanding that, even if the Trustee were able to collect $750,000 from either the Stephenses or LHSE in Settlement proceeds, that money would first go to pay administrative costs and claims (such as unpaid LHSW employee salaries), then potentially to pay part of a priority claim by the IRS if any money were left over.  It does not appear likely that any creditors would get a share of any Settlement proceeds collected.

Strike the Trustee's Pre-trial Brief arguing, in part, that it sought to raise entirely new issues for consideration on the eve of trial, scheduled for January 19-20, 2011 – specifically, that the Trustee was now arguing that Pinewood was attempting to pursue the Trustee's causes of action. (R. PW3: 003174, 003151). A trial was held on the AP Complaint, following which the parties filed simultaneous post-trial briefs on February 2, 2011. (R. PW3: 003394, 003409).

On May 23, 2011, Pinewood filed a Second Amended Complaint (Doc. 3-6) in its State Court Case, which was introduced to the bankruptcy court and received for consideration during the May 24, 2011 hearing regarding approval of the Settlement after remand. (R. PW3: 001128). On June 8, 2011, the bankruptcy court entered an Order enjoining Pinewood "from pursuing LHSE and Grundy in state or federal court because Pinewood is pursuing the Trustee's settled causes of action." (R. PW3: 003462-003463).

Pinewood did not name the Debtor as a party, nor does it appear to seek relief specifically from the Debtor, in its Second Amended Complaint in state court.[10] Rather, in the State Court Case, Pinewood appears to seek, *inter alia*, to pierce the corporate veil of LHSW to its shareholders, Alice and Kimbro, and to pursue judgment against LHSE and other "Related Entities"[11] as the alter egos

---

[10] The Court cautions that its intent is not to make any specific findings, in this Opinion and Order, as to what causes of action may belong to either Pinewood or the Trustee. The Court simply characterizes what claims Pinewood or the Trustee appear to be bringing in their respective actions for the purpose of ruling on the Appeals currently before the Court, without making any findings as to who has standing to bring what claim, except insofar as the Court follows the law of the case as found by Judge Hendren (and with which the undersigned agrees), that alter ego and veil-piercing claims belong to the creditors.

[11] Pinewood alleges in its Second Amended Complaint that the following entities were formed by Kimbro and Alice following LHSW's alleged breach of the lease agreement: Living Hope Healing Waters, Inc., LHSE, Living Hope Texarkana, Ouachita Limited Partnership, Veritas Limited Partnership, and the AK Tennessee Irrevocable Trust. Pinewood further alleges that Kimbro and Alice, or their family members, own or control, or owned or controlled the following entities: The

of Kimbro and Alice and as the alter egos of LHI, one for another.[12]  (R. PW3:002816-002835).

Pinewood also seeks to recover on certain fraudulent transfers, but only to the extent that assets

"were constructively or fraudulently transferred from LHI or any other Defendant who is not a debtor

in a pending bankruptcy case, or are traced into other assets of any other Defendant who is not a

debtor in a pending bankruptcy case . . ."  (R. PW3: 002829-002830).[13]  While the bankruptcy court

---

Stephens Family Limited Partnership, Living Hope Foundation, Living Hope Medical Services, LLC, Living Hope New Boston, LLC, and LHI.  They refer to all of the above listed entities in their Second Amended Complaint as "Related Entities."  (Tr.  PW3: 002821-002822).

[12] The Court does note one line in Paragraph 51 of the Second Amended Complaint, stating that "Plaintiff is entitled to . . . judgment against . . . LHI, LHSW, and LHSE as the alter egos of Grundy, one for another . . ."  It appears to the Court that, considering the line in the context of the Second Amended Complaint as a whole, any allegation to pursue judgment against LHSW was inadvertently included as LHSW is not included as a Defendant in the Second Amended Complaint nor mentioned as subject to a judgment anywhere else in the Second Amended Complaint.  The Court does not consider that one line to indicate that Pinewood is seeking to secure a judgment against LHSW in state court.

[13] This appears to have been made clearer in the Second Amended Complaint.  The First Amended Complaint included a claim that "to the extent that assets of the obligors under the Lease, the Guaranty Agreement as as set forth above were constructively or fraudulently transferred, or are traced into other assets, Pinewood seeks to recover the transfers or impose a constructive trust and equitable lien on those assets . . ." (R. PW3: 002551).  Therefore, in the First Amended Complaint, it certainly could have been construed, as argued by the Trustee, that Pinewood was seeking to recover fraudulent transfers from LHSW. However, the Second Amended Complaint makes clear that Pinewood does not seek to recover any fraudulent transfers from any debtor in a bankruptcy case. (R. PW3: 002829-002830).

The Trustee also made much of the fact that Pinewood alleged, on an alternative theory of successor liability (of LHSE to LHSW's liabilities), in the First Amended Complaint that "[a]lternatively, the shifting of LHSW's operations constituted a *de facto* merger of LHSW" rendering LHSE liable as a successor in liability to LHSW.  (R. PW3: 002550).  While the wisdom of Pinewood styling its pleadings in such a fashion might be questionable, it does not appear that, as characterized by the Trustee, Pinewood was seeking a merger of the Debtor with LHSE.  (R. PW3: 003404).  Rather, it appears that Pinewood was stating a basis for which it might be able to seek equitable relief, in that the court might find that a *de facto* merger had already happened and LHSE had succeeded to the liabilities of LHSW.

held that Pinewood had a right to pursue its alter ego/veil piercing claims, the court found that Pinewood did not have a right to pursue the Trustee's causes of action and that Pinewood was unfairly attempting "to obtain a judgment against LHSE and Grundy prior to the fixing of the Trustee's inchoate judgment lien" against LHSE, as contemplated in the Settlement.  (R. PW3: 003462).

To further complicate matters, Kimbro Stephens also filed for Chapter 7 bankruptcy in the Western District of Arkansas, Hot Springs Division on November 30, 2010.[14]  (R. PW3: 002809-002813).  Kimbro applied to remove Pinewood's State Court Case to that bankruptcy court stating first, on January 14, 2011, that Pinewood's primary cause of action (alter ego/piercing the corporate veil) had been resolved through the LHSW bankruptcy proceeding. (R. PW3:002806). Kimbro later filed, on January 26, 2011, an Amended Application for Removal stating that Pinewood's alter-ego claims "sound[] in fraudulent transfer, a classic bankruptcy remedy."  (R. PW3:002810).  Judge Taylor entered an Order on March 21, 2011 granting a Motion by Pinewood for mandatory abstention and discretionary or permissive abstention and remanding the State Court Case back to Miller County Circuit Court.  (R. PW3: 002812-002813).

Essentially, as this Court understands the state of affairs, both Pinewood and the Trustee are interested in pursuing the assets of LHSE[15] in order to satisfy Pinewood's claims for damages and

_____

[14] Honorable Richard D. Taylor, United States Bankruptcy Court for the Western District of Arkansas.

[15] Although the Court has actual knowledge that LHSE has now also filed for bankruptcy in the Eastern District of Arkansas (before the Honorable Audrey Evans, Case 4:12-bk-11082),  that fact was not considered by the Court in making any finding in either appeal considered herein, as such was not the case at the time Pinewood filed either of the instant appeals.  Therefore, the Court will continue to presume, for the purposes of this Opinion and Order that LHSE has assets that may potentially be pursued by Pinewood and/or the Trustee, as that was the state of affairs considered by

the Trustee's Settlement, respectively.  Both Pinewood's and the Trustee's proceedings involve allegations concerning the shifting of assets from LHSW to LHSE.  Pinewood also has pending causes of action concerning shifting of assets from LHI to LHSE.  Both proceedings also involve other related entities formed, or at some point owned or controlled by the Stephenses, as alleged alter egos/shareholders/fraudulent transferees.  The Debtor, LHSW, as well as LHI, have both essentially been fleeced by the Stephenses such that any recoverable assets in these underlying proceedings are being held by LHSE,[16] which is, in turn, ultimately controlled by the Stephenses.  While the Stephenses are the only parties specifically obligated to pay the Trustee under the Settlement, the Settlement also contemplates that the Trustee "shall have an inchoate judgment lien on all membership interests of LHSE and all assets owned by and on all income derived from the operation of LHSE," which the Settlement contemplates would  ripen into a fully vested and perfected lien if Kimbro and Alice were to fail to timely cure a default. (R. PW3: 000015).  Grundy, the Chief Executive Officer of LHSE, testified before the bankruptcy court that LHSE is, in fact, paying the obligations of Kimbro and Alice under the Settlement, and has thus far paid in the vicinity of $146,500.00. (R. PW3: 002413-002415).

## II.     Standard of Review

---

the bankruptcy court in making its decision.

The Court is also aware that a separate appeal from the LHSW bankruptcy case was heard by the Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.  Although these facts were not considered in the pending appeals, the Court does note that the total number of federal and state judges who have now had a hand in this litigation (that the Court is aware of) is seven, inclusive of the undersigned.

[16] It appears that other Stephens-controlled entities may also hold assets or act as pass-throughs for the funneling of assets related to this case.

-12-

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court. The Court examines the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Food Barn Stores, Inc.*, 107 F.3d 558, 561-62 (8th Cir. 1997). Where, as in this case, there are mixed questions of law and fact, the district court conducts a *de novo* review. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008).

## III.    Discussion

### A.    Appeal from Bankruptcy Court's Order Approving the Settlement Subsequent to Remand

As stated above, on March 18, 2011, Judge Hendren reversed the bankruptcy court Order approving the Settlement and remanded the matter to the bankruptcy court, finding that the Trustee had no standing to bring or settle alter-ego or veil-piercing claims, which belonged to the creditors. (R. PW3: 000925). At the hearing to address the state of the Settlement following remand, the bankruptcy court agreed with the Trustee's interpretation of Judge Hendren's Order, which was that Judge Hendren had approved the Settlement such that there was no need for a new settlement. (R. PW3:001231). Pursuant to that interpretation of Judge Hendren's ruling, the bankruptcy court issued an Amended Supplemental Order Approving Settlement, finding that "for the reasons stated in open Court on May 24, 2011," the Trustee's Settlement was again approved in all respects except for carving out "any cause of action under any alter ego theory to pierce the corporate veil . . ." (R. PW3:002890).

As an initial matter, the Court finds that the Trustee's interpretation of Judge Hendren's Order, as adopted by the bankruptcy court, was erroneous. As the Court stated in its previous Order (Doc. 30), Judge Hendren's Order may only be read as finding that the Settlement was flawed due

-13-

to the inclusion of both alter-ego and veil-piercing claims "personal to the creditors which the Trustee had no standing to assert." (R. PW3: 000925). As was reasoned in Judge Hendren's Order, since the Trustee never had standing to assert such claims, she likewise did not have standing to settle them. The error of the bankruptcy court was not simply or solely in failing to "carve out" such claims. The error was in approving a settlement which should never have included such claims to begin with.

The Trustee reasons that Judge Hendren specifically found that the Settlement was in the best interest of the creditors in arguing that the Settlement itself was upheld, and not overturned. Judge Hendren did not make any finding that the Settlement was in the best interest of the creditors. Rather, Judge Hendren simply stated that he could not say that the bankruptcy court *abused its discretion* in determining that the Settlement was in the best interest of the creditors. (R. PW3: 000925). This is a meaningful distinction and one that should be carefully regarded. In making that statement, Judge Hendren was not approving the Settlement, but rather rejecting one of Pinewood's three arguments for reversal. Rather, the basis for reversal was the fact that the Trustee purported to settle claims she had no standing to bring. Regardless, once Judge Hendren found that the bankruptcy court's Order was to be reversed – on any grounds – it was then for the bankruptcy court to determine, upon remand, whether any future settlement reached by the parties was in the best interest of the creditors.

In the same way, the fact that Judge Hendren rejected Pinewood's second basis for reversal (that the bankruptcy court made inadequate findings of fact regarding the settlement) does not mean that the Settlement was upheld as a result of the Order. Rather, Judge Hendren simply made it clear on what grounds he was reversing the Settlement in addressing each of Pinewood's arguments. As

-14-

stated by Judge Hendren, "[i]t is not the failure to make findings of fact and conclusions of law that constitutes error here but, rather, *the approval of the erroneous Settlement in the first place*." (R. PW3: 000922).

Judge Hendren clearly stated that the bankruptcy court's error "requires *reversal* of the Bankruptcy Court's Order approving the Settlement. Accordingly, that Order will be *reversed* . . . IT IS, THEREFORE, ORDERED that . . . the Order of the Bankruptcy Court approving Settlement is *reversed* . . ." (R. PW3: 000925) (emphasis added). It is clear, therefore, that the effect of Judge Hendren's Order was to reverse the bankruptcy court's Order approving the Settlement – the entire Order – on the grounds that the Trustee brought, and purported to settle, claims rightfully belonging to the creditors. Judge Hendren did not conclude that the Order was reversed in part or reversed with any exceptions. The case was remanded to the bankruptcy court for "further proceedings consistent with [the] opinion." *Id.* Therefore, upon remand, because the bankruptcy court's Order had been reversed, the approval of the Settlement was reversed, and the parties had no existing, approved settlement.

The Court finds that the bankruptcy court therefore erred in again approving the Settlement by simply "carving out" those claims belonging to the creditors. "A compromise or settlement is, by definition, a negotiated, consensual agreement. A bankruptcy court cannot rewrite the agreement and, by doing so, approve terms that differ from those to which the parties agreed." *In re Central Illinois Energy, LLC*, 406 B.R. 371, 374 (Bankr. C.D. Ill. 2008). A bankruptcy court "must accept or reject the settlement as presented." *Id.* (citing *In re Trism, Inc.*, 282 B.R. 662, 668 (8th Cir. BAP 2002)). A district cannot order the bankruptcy court to do something – unilaterally modify a settlement agreement – that the bankruptcy court is without the authority to do, and Judge Hendren's

-15-

Order should not be interpreted as doing just that.

Based on the record before the Court, and before the bankruptcy court at the time the Amended Supplemental Order Approving Settlement, the Court finds that no new settlement was reached, considered by the bankruptcy court, and approved before the Order approving the Settlement was entered. The Court must look to state law to determine whether a settlement agreement was formed in this case subsequent to remand. *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1023 (8th Cir. 2010). On the subject of contract formation, the Arkansas Supreme Court has stated,

> We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. [All] parties must manifest assent to the particular terms of the contract . . . For a party to assent to a contract, the terms of the contract must be effectively communicated.

*Alltel Corp. v. Sumner*, 360 Ark. 573, 576-77 (2005) (internal citations omitted).

The Trustee argued, in her Response to Pinewood's Motion to Alter and Amend the bankruptcy court's Supplemental Order Approving Settlement, that the entry of a Consent Judgment[17] on June 11, 2011 "conclusively establishes that all parties have consented to and ratified the prior settlement agreement." (R. PW3: 002880). The Court first notes that the Consent Judgment was excluded from consideration by the bankruptcy court when offered by the Trustee at the hearing on Pinewood's Motion to Alter or Amend the Court's Supplemental Order Approving

---

[17] It should be noted that the Consent Judgment referred to here is not the Consent Judgment referred to earlier in this case. The Court, here, is referring to a Consent Judgment entered in the bankruptcy court. Earlier in the Opinion, the Court referred to a Consent Judgment entered against LHI in the Pinewood State Court Case.

-16-

Settlement.  (R. PW3: 002913).  Because the Consent Judgment post-dates the original hearing regarding approval of the Settlement, the bankruptcy court did not consider it when issuing its initial Order approving the Settlement, and the Court cannot properly consider it as part of the record now. Because, however, the Trustee has nonetheless raised the issue, and because consideration of the Consent Judgment does not change the Court's opinion, the Court will briefly address the Trustee's arguments.

The Consent Judgment clearly states that it is "based on the Settlement Agreement that the parties entered into on May 27, 2009," which was voided by Judge Hendren's Order.  (R. PW3: 002882).  Furthermore, only the undated, electronic signatures of counsel for the Trustee, counsel for Kimbro, and counsel for LHSE appear at the bottom of the Consent Judgment.  (R. PW3: 002884).  The original Settlement included many more signatories that do not appear as ratifying the Consent Judgment.  The Consent Judgment also does not include any clarification of what actions the Trustee is settling after removing any actions belonging exclusively to the creditors, and instead simply refers back to the original Settlement which purported to settle actions the Trustee had no standing to bring.  The Consent Judgment does not satisfy the elements required for finding formation of a contract under Arkansas law.  Even if the Court were to accept the Consent Judgment as a new settlement or as ratification of the original Settlement, it would appear that the agreement would remain flawed as inclusive of claims the Trustee had no standing to bring.

Finally, on cross-examination at the May 24, 2011 hearing the Trustee herself testified that she had met with some of the settling defendants, but that she would not characterize the meeting as a settlement conference, could not affirm who was present or in what capacity, and could not say that any agreements were reached.  (R. PW3: 001198-001202).  Rather, the meeting was held to

-17-

discuss Judge Hendren's opinion.  (R. PW3: 001202).  The Trustee then stated that another meeting had been scheduled, but she was not present at that meeting, did not know who attended, and did not know the purposes of any second meeting.  (R. PW3: 001202-111203).  It does not appear that, at least prior to the bankruptcy court entering its Amended Supplemental Order Approving Settlement, any meeting of the minds occurred or any new settlement agreement was reached between the settling parties in line with Judge Hendren's Order, using objective indicators as to what claims the Trustee was settling, and what value the settling defendants agreed to assign to those remaining claims.

        For all of the reasons set forth above, THE COURT FINDS that the bankruptcy court erred in entering its Supplemental Order Approving Settlement and Amended Supplemental Order Approving Settlement without the parties having formed a new settlement agreement subsequent to reversal and following proper procedures to get any new settlement noticed and approved.  The bankruptcy court's approval of the Settlement is, therefore, REVERSED and remanded for further proceedings.  Any future settlement that may be reached between the parties should conform with Arkansas law as to formation of a contract and should be approved pursuant to Federal Rule of Bankruptcy Procedure 9019.

        The result of this Order is that the parties currently have no valid, approved settlement agreement in place.  The Court acknowledges that the practical effects of this Order may be devastating to the parties' ability to piece together another settlement after remand at this point in time, given the Court's knowledge that LHSE as well as Kimbro have now, themselves, declared bankruptcy.  Unfortunately, it appears to the Court that the Stephenses, as well as the entities that they and other individuals control, have engaged in a manipulative scheme, such that the battle for

-18-

either the Trustee or any creditors to recover any assets has been and undoubtedly will be hard-fought and uphill.  Moving forward, the parties are encouraged, in order to avoid any future appeals or protracted litigation, to be clear as to what claims are being brought (in state court or bankruptcy court) and what, if any, claims are being settled or resolved.

**B.     Appeal from Bankruptcy Court's Order Enjoining Pinewood from Proceeding in State Court Case**

As previously stated, on June 8, 2011, the bankruptcy court entered an Order enjoining Pinewood "from pursuing LHSE and Grundy in state or federal court because Pinewood is pursuing the Trustee's settled causes of action." (R. PW3: 003462-003463).  In accordance with Federal Rule of Bankruptcy Procedure 8005, Pinewood filed a notice of appeal from that Order (R. PW3: 003464) and moved the bankruptcy court to stay its Order pending the appeal. (R. PW3: 003468).  The bankruptcy court denied that motion on June 27, 2011, after a hearing.  (R. PW3: 003538).[18]  On that same date, Pinewood filed in this Court its Emergency Motion to Stay the bankruptcy court's injunction pending the present appeal. (Doc. 3).

On July 1, 2011, the Court entered an Order temporarily staying the bankruptcy court's injunction "to preserve the status quo while giving the Court sufficient opportunity to consider the merits of the motion for stay pending appeal . . ." (Doc. 11).  The Court held an in-court hearing in the lead case, which included consideration of the then-pending Motion to Consolidate, on September 26, 2011.  The consolidated cases were ripe for consideration and ruling by this Court by November 21, 2011.  On January 11, 2012, the Court entered a Memorandum Opinion and Order granting the Motion to Consolidate, denying Motions to Strike by the Trustee, and granting

---

[18] A written Order was entered on July 1, 2011. (R. PW3: 003538).

Pinewood's Motion to Stay the bankruptcy court's injunction pending a final decision on the merits. (Doc. 30). The Court also held a telephonic status conference in the consolidated cases on July 24, 2012. Pinewood presented certain exhibits to the Court after that status conference, which have not been considered by the Court when making its findings herein. For the reasons set forth below, the Court finds that the bankruptcy court erred in entering its Order enjoining Pinewood from proceeding in its State Court Case.

First, the Trustee filed her AP Complaint for Injunctive Relief against Pinewood alleging that Pinewood's state court allegations were substantially similar to the allegations of the Trustee in her various adversary proceedings and that Pinewood's State Court Case would adversely impact the Trustee's Settlement. Because Judge Hendren found that the bankruptcy court approved the Settlement in error, there was no settlement in existence at the time that the Trustee filed her AP Complaint which could be adversely impacted. Furthermore, LHSE was not specifically obligated to pay under the Settlement, and the "inchoate judgment lien" against its assets could not have become ripe at that time, if ever, without at least a judgment having been entered and the Stephenses defaulting on their payments.

Second, even had the Settlement still been in force at that time, the evidence before the Court indicated that Pinewood's State Court Case was not the root cause of any inability on the part of LHSE to fund the Settlement. In fact, Grundy testified at the January 19, 2011 AP hearing that LHSE was not obligated to pay anything under the Settlement. (R. PW3: 002355). Furthermore, LHSE's counsel had sent the Trustee a letter indicating an inability to pay months before Pinewood even revived its State Court Case by filing its First Amended Complaint. (R. PW3: 002365). And, further, LHSE was making equity distributions totaling in the tens of thousands of dollars, generally

-20-

at the direction of Alice's father, and presumably for the ultimate benefit of Kimbro and Alice, despite the fact that it was claiming it could not fund the Settlement and despite the fact that an order had been entered in the State Court Case restraining LHSE from making any payments outside the ordinary course of business.  (R. PW3: 002351-002372).  Although Grundy initially asserted that he stopped making payments (on behalf of LHSE) to the Settlement escrow account "because the cash flow didn't allow us to continue making contributions," when pressed by Judge Mixon, Grundy admitted he simply made the choice to fund equity distributions instead of funding the Settlement. (R. PW3: 002371).  During the relevant time period after the Settlement was entered into (and after the restraining order was entered in state court), LHSE also chose to pay various obligations for which it was not liable, including payment of utilities of a house not owned by LHSE (to the tune of $500 a month funneled through the AK Trust, at the direction of Robert Williams and presumably for the benefit of the Stephenses) and attorneys' fees for counsel representing individuals and entities other than LHSE.  In essence, it appears as though Kimbro and Alice – along with their various related entities and individuals – were using LHSE, which was in turn using the assets fleeced from LHSW and LHI, as their primary source of money.

Furthermore, the Court remains unconvinced that this case is one in which Pinewood may be enjoined from pursuing non-debtors based on the fact that such litigation may adversely affect the Trustee's estate or the Settlement. While the Eighth Circuit has "recognized the *possibility* of expanding the automatic stay when presented with 'unusual,' 'rare,' or 'limited' circumstances," it has "found these restrictive terms to have real meaning, and [has] not lightly extended the stay." *In re Panther Mountain Land Development, LLC*, 686 F.3d 916, 924 (8th Cir. July 25, 2012) (citing *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002, 1015 (N.D. Iowa 2001) ("Eighth

Circuit caselaw . . . is illustrative of a generalized reluctancy to expand the scope of the automatic stay provision of the Bankruptcy Code and to limit and expansion to truly extraordinary cases.")).

Third, as noted by the Court in its previous Memorandum Opinion and Order (Doc. 30), the fact that Pinewood's state court claims involve substantially similar underlying factual allegations as the Trustee's AP claims does not convert Pinewood's claims into the Trustee's, when the same underlying facts may give rise to more than one legal theory of recovery.  Here, while the Trustee and Pinewood may be seeking to recover from the same source, Pinewood is entitled to bring claims reserved to it as a creditor – including alter-ego and veil-piercing claims – while the Trustee is entitled to bring any claims she has standing to bring under the rules of bankruptcy, including claims to recover assets fraudulently transferred post-petition.  In its Order enjoining Pinewood, the bankruptcy court found that "Pinewood has a right to pursue its alter ego/veil piercing claims against the owners of LHSE; however, Pinewood does not have a right to pursue the Trustee's causes of action." (R. PW3: 003462).  The bankruptcy court ultimately concluded that "Pinewood is hereby enjoined from pursuing LHSE and Grundy in state or federal court because Pinewood is pursuing the Trustee's settled causes of action." (R. PW3: 003462-003463).  The bankruptcy court is far from clear in distinguishing between the alter-ego/veil-piercing claims that Pinewood has a right to pursue and the Trustee's causes of action which Pinewood does not have the right to pursue. Aside from enjoining Pinewood from pursuing any claims that may belong to the Trustee,[19] the bankruptcy court should not have enjoined Pinewood from pursuing claims reserved to it as a creditor.  After

---

[19] The bankruptcy court found that Pinewood did not have authority to maintain causes of action to recover post-petition transfers or fraudulent pre-petition transfers, as those claims belong to the Trustee. This should not alter the District Court's previous ruling, however, that alter-ego and veil-piercing claims may be pursued by Pinewood as a creditor.

thoroughly reviewing the record and considering the parties' arguments, the Court finds that the bankruptcy court erred in finding that Pinewood was pursuing the Trustee's causes of action without delineating where Pinewood's alter-ego/veil-piercing claims encroached onto any causes of action which belonged exclusively to the Trustee.  The bankruptcy court therefore also erred in ordering a seemingly permanent wholesale injunction of Pinewood's pursuit of any claims against LHSE or Grundy in state or federal court based, at least in part, on that finding.

Based on the reasons set forth above – that no settlement existed at the time the injunction was entered with which Pinewood could interfere, and that the bankruptcy court erred in finding that Pinewood was pursuing the Trustee's causes of action without further explanation or delineation – the Court must find that the bankruptcy court erred in enjoining Pinewood from proceeding in its State Court Case.  The COURT FINDS THEREFORE that the bankruptcy court's Memorandum Opinion enjoining Pinewood from pursuing LHSE and Grundy in state or federal court is REVERSED, and the case is REMANDED for further proceedings in accordance with this Order.[20]

Because the Court finds the bankruptcy court's injunction should be reversed on the grounds set forth above, it declines to address, herein, Pinewood's other asserted grounds for reversal.

## VI. Conclusion

For all the reasons stated above IT IS ORDERED that the Order of the bankruptcy court approving the Settlement upon remand is reversed.

IT IS FURTHER ORDERED that the Order of the bankruptcy court enjoining Pinewood from proceeding against LHSE or Grundy in state or federal court is also reversed.

_____

[20] At this point, the Court's ruling on this issue appears to be somewhat of a nonevent due to the fact that Pinewood will, notwithstanding this Order, be enjoined from pursuing LHSE due to LHSE's pending bankruptcy unless Pinewood can get relief from that automatic stay.

The case is remanded to the bankruptcy court for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 5th day of October, 2012.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE